**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

ADELINA BLANKENSHIP

     Plaintiff

     v.

YESENIA LASSITER

     Defendant

Docket No. 1:23-cv-1328

JURY TRIAL DEMANDED

BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CONCERNING COUNT II

**INTRODUCTION**

Brazen attention-seeking, childish theatrics, outlandish exaggerations; these traits characterized the social media Internet assault Defendant waged against Plaintiff, whom Defendant made an unwitting co-star in a low-grade reality show.  It was character assassination of the worst kind – and the Defendant urged mass public participation.  Defendant found a sort of fame – even once earning millions of social media views – and at every turn Defendant escalated the allegations and outrage-seeking, including flagrant deceptions, to stoke the mob.

The Plaintiff is a mother, SPED teacher/administrator – and a private person (legally and actually). The Defendant is a mother and an Internet provocateur that she uses to publicly advocate for special needs education of various kinds, including SPED.

Using social media, Defendant created a panoply of multimedia presentations with image, name, and audiovisual recordings of Plaintiff ripped from video-recorded school meetings. It is important to note that this legal action is not solely based on these video-recordings as the Defendant would have this Court believe. The accusations of illegality and defamation were constant and coarse; the presence of videos simply makes this action more inflammatory and dangerous for Plaintiff. Defendant was never supposed to have the recordings, nor post them publicly. The Plaintiff conducted SPED meetings in the usual manner with the Defendant, because the Daughter, although not qualifying for SPED services, received them due to Defendant's constant campaigning with Prince William County. The Daughter has medical maladies that may very well inhibit her ability to participate in formal education; however, they are physical maladies rather than cognitive maladies.

Physical maladies for students are handled on a 504 plan. See Compl. Par. 6. Cognitive issues are handled under IED. See Compl. Par. 6. The Defendant, although advised of the

difference, demanded IED meetings at an excessive rate and degree for which she demanded inapplicable IED services, and when Prince William County would not supply them at the degree to which Defendant demanded, she flew into hysterics, and then eventually began to tape the meetings and invent deficiencies of Prince William County IED team (the "IED Team") assigned to the Daughter (of which Plaintiff was the lead) and created non-existent maladies on the part of the Daughter to stoke mob-outrage. These were mostly captured on video.

Naturally, the videos themselves were based in fraud as the Defendant guilted a member of the IED Team to supply them to her because the Defendant required her own accommodation [sic] with Prince William County and stated that because Defendant had a "traumatic brain injury," she could only understand videos if she had audiovisual copies of them.  When Prince William County realized that she was posting select snippets of the videos publicly, it reminded her in an email that this was contrary to regulations, which, of course, she posted as a video.

**FACTS**

(See Fact Section of Dkt. 8)

## ARGUMENT

## I. MOTIONS FOR SUMMARY JUDGEMENT AT THE PLEADING STAGE

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolan v. Cotton,* 572 U.S. 650, 655-57 (2014); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). If the movant carries this burden, the nonmovant must present specific facts that demonstrate a genuine dispute for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). An opposing affidavit for summary judgment purposes, when the allegations contained

therein are based on personal knowledge, are operative to combat the allegations of the moving party. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).

A Court should accept as true all well-pled facts in the complaint and construe them in the light most favorable to non-moving party. *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015).The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "If, on a motion under Rule 12(b)(6)..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)

## II. DEFAMATION GENERALLY

Under Virginia law, the elements of defamation are: (1) Publication about the plaintiff; (2) an actionable statement and (3) the requisite intent. *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 666 (E.D. Va. 2015). Defamation may be defeated by qualified privilege, and qualified privilege may be defeated by a showing of malice. *Id*. Publication sufficient to sustain a common-law defamation is accomplished by uttering the slanderous words to some third person so as to be heard and understood by such person. *Thalhimer Bros. v. Shaw*, 156 Va. 863, 871, 159 S.E. 87, 90 (1931). In order that a civil action at common law for libel may be maintained, it must appear to have been communicated to one or more strangers, and the same rule applies to common-law actions for slander. *Id*.

Lassiter accused Blankenship of committing crimes, violating the Daughter's civil rights, deceit, and in a myriad of ways accused Blankenship of professional incompetence to her

managers, colleagues, and the world at large. These accusations are all actionable *per se*; in other words, no further proof concerning harm is necessary. *Mopsikov v. Cook*, 122 Va. 579, 587, 95 S.E. 426, 428 (1918)(Where the words spoken are actionable *per se*, no averment or proof of special damages is necessary). False accusations of crime are actionable *per se. Com. v. Morris*, 3 Va. (1 Va. Cas.) 176 (1811); *England v. Daily Gazette Co*., 143 W. Va. 700, 711, 104 S.E.2d 306, 312 (1958)(same).   False accusations of dishonesty are actionable *per se. Warren v. Bank of Marion*, 618 F. Supp. 317 (W.D. Va. 1985). False accusations having a tendency to injure another in her profession or trade are actionable *per se. Chapin v. Greve*, 787 F. Supp. 557, 562-63 (E.D. Va. 1992).

### A. THE CAMPAIGN VIDEO TITLED: '@PWCS KNEW THAT HOLDING THE MEETING WITHOUT PARENTS THERE WAS ILLEGAL SO THEY HAD TO FABRICATE A REA'

Facially, the title to this Campaign Video is actionable on its face. It accuses Blankenship and her team of holding an illegal meeting, and lying to do so.  When reviewing social media posts, it is appropriate to not only view the content of the post, but also the surrounding information placing it in context.  *See e.g., Ascend Health Corp., UHP, LP v. Wells*, 2013 U.S. Dist. LEXIS 35237 *18 (E.D.NC 2013)(Court reviews not only a post but the title).  In assessing the defamatory content of a video publication, "a court and jury cannot confine their analysis to the words alone" but "are necessarily required to also consider the impact of the video portion of the program since the television medium offers the publisher the opportunity, through visual presentation, to emphasize and convey ideas in ways that cannot be ascertained. from a mere reading of the words in a written transcript." *Battle v. A&E Tel. Networks, LLC*, 837 F. Supp. 2d 767, 772 (M.D. Tenn. 2011). "The defendant's defamatory words, standing alone, cannot readily be identified in isolation without also considering the accompanying visual images, the tone of voice of the announcer or

reporter, along with the combined audio and video editing effects." *Id*. Thus, the court "must scrutinize the juxtaposition of the audio and video portions" and "should be sensitive to the possibility that a transcript which appears relatively mild on its face may actually be, when the total mix of creative ingredients are considered, highly toxic" because "a clever amalgamation of halftruths and opinion-like statements, adorned with orchestrated images and dramatic audio accompaniment, can be devastating when packaged in the powerful television medium." *Corporate Training v. NBC*, 868 F. Supp. 501, 507 (E.D.N.Y. 1994).

The image of Blankenship that places the word "Absent" under her face is actionable as well. Absent[1] means: "not present at a usual or *expected* place : *MISSING.*" Absent suggests that Blankenship ought to have been at the meeting, but was not. This is false, Blankenship was not asked to participate in the meeting for two reasons: (1) she is classified as a teacher and is disallowed from working in the summer; (2) the meeting was for the Daughter's upcoming IEP in high school, not the Middle School, where Blankenship is an advisor. This implies that Blankenship was professionally negligent. *See e.g., Fuste v. Riverside Healthcare Ass'n,* 265 Va. 127, 133, 575 S.E.2d 858, 862 (2003)( Alleged statements that two physicians "abandoned" their patients not only prejudiced the doctors in the practice of their profession, but also contained a provably false factual connotation. In other words, they were capable of being proven true or false, and therefore actionable *per se*.).

Statements in the video indicating that Lassiter was being held against her will are actionable as suggesting a crime. When the *Ascend Health* court analyzed the statement: "'Why does UBH Denton Hold People Against their Will? Because it pays. Duh,'" the court found: "when reading the post and its title, they conceivably convey that UBH commits insurance fraud and

---

[1] https://www.merriam-webster.com/dictionary/absent

falsely imprisons its patients." *Ascend Health* at *18. The theatrics employed by Lassiter are professionally damaging.

Multiple times in the course of the video, the "social scientist" derides Blankenship's work product in the IEP.  She exclaims that the goals and metric are "impossible," and frequently implies that the meeting cannot continue because Blankenship (1) is not present (2) to explain her defective work product. It is not necessary to make a writing libelous that the imputations should be made in the form of positive assertion. It is equally so if they are expressed in the form of insinuation, provided the meaning is plain.  *James v. Powell*, 154 Va. 96, 107 152 S.E. 539, 543 (1930) citing *Adams v. Lawson*, 17 Gratt. (58 Va.) 250. Indirect, artful, and even disguised the modes in which the meaning is concealed can be defamatory. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 12, 82 S.E.2d 588, 592 (1954). Accordingly, a defamatory charge may be made by inference, implication or insinuation.  *Id*.

### B. CAMPAIGN VIDEO TITLED: 'LIES, LIES AND MORE LIES'

In the Campaign Video titled 'Lies, Lies and More Lies,' the title on its face is actionable. The meaning is clear; Adelina and her team are lying to Lassiter to prevent her from attending meetings.

### C. CAMPAIGN VIDEO TITLED: 'FEELING GASLIT

In the Campaign Video titled 'Feeling Gaslit,' Lassiter[2] states that her Daughter is not allowed to go to the bathroom upon request. This is false. For the entirety of Blankenship's tenure

---

[2] This is actually one of Lassiter's few valid concerns. The Daughter *is* on medication, and this medication purports to have symptoms for which occasionally a young lady ought to dash to the bathroom. On one occasion, prior to Blankenship's tenure, a teacher asked the Daughter to wait some minutes prior to going to the bathroom. This was prior to a medical plan being filed with the Daughter's teachers indicating the need. Nevertheless, this is a different type of accommodation based on an entity called a '504 plan,' not an IEP. As discussed in the facts section, Blankenship created an exception in the electronic bathroom logging system to allow Lassiter expedited access to the bathroom.

with the Daughter, she has had access to the 'fast pass' electronic bathroom-logging exception. Lassiter took issue with the fact that the Daughter's bathroom trips required logging *at all*, and uttered a statement that is actionable on its face. This is especially true in consideration of the title to the video, "Feeling Gaslit." There is a regulation that teachers must follow, and teachers must know where students are in the event of an emergency – particularly for SPED and disabled students!

### D. ODIOUSNESS

Furthermore, falsely portraying the Daughter as a cancer patient oversteps any bounds of decency; and the public has reacted exactly as expected: intense hatred and ire for Blankenship. Defamatory statements must be more than merely unpleasant or offensive; it must make the plaintiff appear odious, infamous or ridiculous. *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). Casting Blankenship as oppressing a young girl with cancer makes Blankenship appear at least odious and infamous.

## III. DEFAMATION SPECIFICALLY

### A. "OF OR CONCERNING" A DEFAMATION PLAINTIFF

Defamation in Virginia need only concern statements "about, or concerning," a person. *General Prods. Co. v. Meredith Corp.*, 526 F. Supp. 546 (E.D. Va. 1981). Defendant, seemingly oblivious to case law, made representation concerning the status of defamation law that were…ill-conceived, even in the most positive light. Contrary to Defendant's claims, a libelous statement need not specifically name a party. *Lahr v. Adell Chemical Co., Inc.*, 300 F.2d 256, 259 (1st Cir. 1962) ("It has never been held in defamation that a plaintiff must be identified by name"). In Virginia, a libel plaintiff must show that the alleged libel was published "of or concerning" her – rather than directly naming the plaintiff. *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985).

1.   **CONTRARY TO DEFENDANT'S CLAIMS, DEFENDANT'S ASSERTIONS WERE *PER SE* DEFAMATORY.**

Among Defendant's claims, she asserted that the coupling of defamatory labels to a 'small group' containing Plaintiff cannot defame the Plaintiff for various reasons. The mere existence of the image of Illustrations 1-3 are defamatory, almost irrespective of the audio associated therewith.

**<u>Video Still Images</u>**

Illustration 1: Lies, Lies, Lies, And More Lies      Illustration No. 2 PWCS Shady Shenanigans      Illustration No. 3 Cancer?

    

a.   <u>Photographs of Plaintiff with Defamatory Labeling</u>

In each image alone, the PII of Plaintiff is coupled to a *per se* defamatory written statement. Defendant's quibbling over issues such as the 'sting' of being labeled a "liar" or "gaslighter" and the significance of the inclusion of other persons is not well-taken in the least – and directly contradicted by all caselaw.  According to this Court's caselaw: "It is well established that to state a person is a liar is actionable for defamation." *Hartnett v. Hardenbergh*, 2023 U.S. Dist. LEXIS 134743, *33, 3:23-cv-17-HEH, (E.D.Va 2023). This is particularly true when the term "liar" is applied to a specific statement labeled as a "lie." *See also Edwards v. Schwartz*, 378 F. Supp. 3d 468, 525 (W.D. Va. 2019)(emphasis retained)(citing Robert D. Sack, Sack on Defamation: Libel,

Slander and Related Problems § 2.4.7 4th ed. 2010).  Lies, or at least deception, are inherent in being "gaslit."

Defendant makes much of the idea that statements incidental to a defamatory image can remove the taint of the image, but the caselaw disagrees. To begin with, an image may be defamatory based on nothing more than the context that it evokes. *Geiger v. C&G of Groton, Inc*., 424 F. Supp. 3d 276, 298 (D. Conn. 2019). In *Geiger*, the actionable image consisted of a photograph of the plaintiff (a model) on a website having the labeling  "Mynx Strip Club." *Id*. at 287.   The existence of even a single defamatory word or phrase on an image can be sufficient to make the image susceptible to defamation. *Negron*, 2006 WL 240528, at \*18. In *Negron*, a plaintiff-former-employee sued a defendant-company upon its employee's posting of an image of the plaintiff and his dog, along with sexually explicit language indicating that the plaintiff engaged in sexual intercourse with his dog. *Id*. at \*4.  The only reason the *Negron* court opted not to enter summary judgment was because the alleged defamatory statement could have been construed as a joke rather than a statement of fact. *Id*. at \*55. Is "Lies" or "feeling Gaslit" a joke?

     b.   <u>"Of or Concerning" a Person Includes That Person's Work Product.</u>

In the shallowest possible reading of the 'Shady Shenanigans' Video, Defendant explains that the video "does not refer to the Plaintiff in any way." Dkt. 18, p. 16. This is not true; yet even it were, this does not diminish Plaintiff's problems with the video content – which remains uncontradicted. <u>Decl. A. Blankenship</u>, par.16a-d. The "social scientist" declares that Plaintiff's measurement criteria in her IEP work product is "impossible," and when  a Prince William County colleague declines to provide input on the criterion, the "social scientist" informs him that the absent teacher would need to be present to explain the criteria, but isn't. Plaintiff has been introduced on the website many times as the Daughter's teacher/admin, and she is the recipient of

the big, red "absent" label. *Id.*  This Court should assume that the mob is capable of rudimentary logic.

Defendant's lame quibbling concerning "naming" Plaintiff is emblematic of their case.  The video excoriates Plaintiff's work product, then declares that the meeting cannot continue without an absent teacher's (i.e. Plaintiff's) explanation, the image displayed during the video labels Plaintiff as "Absent," and there are specific, express threats of litigation concerning illegal activities. Defendant asked that the videos be admitted into the record.  Yes. Please do.

Assertions as to the negligent or deficient work product of a professional, such as "Shady Shenanigans" can be defamatory, particularly if linked with criminal behavior.  *See* e.g., *Union of Needletrades, Indus. & Textile Emples. v. Jones*, 268 Va. 512, 603 S.E.2d 920 (2004)( A defamatory statement may be made by inference, implication or insinuation) and *Morrell v. Forbes, Inc*., 603 F. Supp. 1305, 1307 (D.Mass. 1985). "Gaslighting" or "Shady Shenanigans" are not just factual statements concerning poor professionalism with overtones of deception, but in light of the civil rights functions of Plaintiff, involve unlawful/illegal behavior.

## B. THE INCLUSION OF THIRD PARTY PHOTOGRAPHS DOES NOT NEGATE DEFAMATORY LABELING.

Defendant points to the inclusion of third party photographs to try to explain away its defamatory labeling. There is no support for this principle in the case law. *See, e.g. Louka v. Park Entertainments Inc*., 294 Mass. 268, 271, 1 N.E.2d 41 (1936).  In *Louka*, the court held that plaintiff could maintain a defamation claim based on the display of her picture at the entrance of a burlesque theater, along with pictures of other performers and above the words "Oriental Beauties" and "Minsky's Midsummer Follies." *Id.* at 269-270. Plaintiff was an actress, not a burlesque performer. *Id*. In finding for plaintiff, the court stated that "it is plain that the publication could have been made of and concerning the plaintiff even if the defendant knew nothing about the plaintiff. The

use of her picture shows that." *Id*. at 271. In *Colon v. City of Rochester*, a defamation plaintiff's image was included in a news/documentary television program as a part of a group photograph, but because the plaintiff was part of the group being castigated, the plaintiff could bring suit. 2002 N.Y. Misc. LEXIS 767, *4, (NY Supreme Court, Monroe Division 2002).  As the *Colon* court explained, the

> [V]iewers listen selectively to programs such as the one at issue, and it involves questions balancing the impact of the image itself with the narration that are more properly questions for the jury.

*Id* at *5.

The First Circuit visited a similar issue when a plaintiff brought suit against a publication that utilized plaintiff's photograph in connection with an article concerning teenage sexual activity. *Stanton v. Metro Corp.*, 438 F.3d 119, 124 (1st Cir. 2006).  When the district court dismissed the claims because the article about the sexual conduct did not mention the plaintiff, none of the sexual conduct was ascribed to the plaintiff, and *a disclaimer expressly stated that the individuals photographed are unrelated to the events in the article*, the First Circuit reversed.  *Id.* and *Stanton v. Metro Corp.*, 357 F. Supp. 2d 369, 374 (D.Mass.2005).  The First Circuit held: regarding "the juxtaposition of the text and the photograph, a reasonable reader could conclude that the teenage girl depicted in the photograph [i.e., plaintiff] is sexually active and engages in at least some form of sexual misconduct." *Id*. at 128-29.

Defamation can therefore arise from the publication of a plaintiff's photograph in conjunction with a defamatory statement, not only in the absence of any express textual connection between the statement and the photograph but even with it. *See also Mabardi v. Boston Herald-Traveler Corp.*, 347 Mass. 411, 413-14, 198 N.E.2d 304, 306 (Mass. 1964); *Morrell v. Forbes, Inc.*, 603 F. Supp. 1305, 1307 (D. Mass. 1985).

If there were not a single audio/video recording of Plaintiff, the representations of the Plaintiff with the defamatory labels and juxtaposition would nevertheless be actionable. Defendant relies principally on the obscure grammatical constructions, all of which are rebuffed by the express statements by the Internet Mob, but offers no other proof. Plaintiff offers proof: when the Internet Mob decries the school administrators for oppressing a cancer patient, it means it. <u>Decl. A Blankenship</u>, par. 21. Defendant's subjective and contrived opinions won't save the Plaintiff from the Internet mob.  The simply act of removing Plaintiff's PII, however, might.

## C.  'SMALL GROUP' THEORY

Defendant then claims that Plaintiff cannot be defamed in videos in which she does not participate (even though she is falsely, artificially depicted by Defendant). If defamatory words are published concerning a restricted group of persons, a member of that group may maintain an action thereon as sole plaintiff. *Swearingen v. Parkersburg Sentinel Co.*, 125 W. Va. 731, 26 S.E.2d 209 (1943).  This 'small group' theory is strictly construed; government agencies as a general rule are rarely considered a 'small group.' However, the exception to the general rule  is if the defamatory language is directed towards a comparatively small group of persons and is so framed as to make defamatory imputations against all members of the small or restricted group. Under this small group theory exception, a member of a small group need not show that the allegedly defamatory statements were directed specifically at the member bringing the action to satisfy the "of and concerning" element of common law defamation. *Dean v. Dearing*, 263 Va. 485, 561 S.E.2d 686 (2002).  In the present case, Defendant supplies photographs of the persons that she identifies as "admins" and provides labelling to assist the lowest common denominator in determining their guilt. These photographs include Plaintiff.

In the 'Admins Have No Empathy' video, for example, Defendant through its brief scoffs at the Plaintiff's umbrage to the idea that she is the subject of the video because the video includes a one-on-one discussion between Defendant and the principal of Gainesville Middle School. However, the exact labeling that the Defendant used is '***Admins*** Have NO EMPATHY'(emphasis added). Plaintiff doesn't doubt that Defendant is carelessly flinging volatile accusations with little-to-no-foresight to the mob, but Defendant said the "***Admins*** have no empathy," not just the principal, Graham.   Assuming that 'admins' is a shortened version of 'administrators' then Defendant is unmistakably including Plaintiff, who is in fact one of the school's administrators and the one chiefly associated with the Daughter in the various videos. Right now, the mob has no reason to believe anything other than that Plaintiff, and other "Admins," are capriciously hurting a young cancer patient for no other reason than an exercise of dominance.

The Defendant suggests that Plaintiff doesn't feel the 'sting' of this sentence, but, as it turns out, the mob can read. They responded thusly.

- "What sort of *people* are these? If this how *they* would treat their own child if they had cancer?
- "Wow that *school* is messed up."
- "*Ya'll* f-ckig w a cancer patient???? Serious???
- "The minute that you said Chemo meds, I knew *they* were absolutely in the wrong."

Decl. A Blankenship, par. 21. Ex.7 (emphasis on plural terms added). *The mob is not talking about the principal, the mob is talking about the school administrators*. The mob can read – and they read exactly what Defendant wrote.

### D.  ALLEGED OPINIONS

Defendant suggests that phrases like "lies," "absent," "gaslighting," "shady shenanigans," "and power flex" are protected opinions that cannot form the basis of defamation. Labels are only

held beyond the grasp of defamation in Virginia if the label is devoid of any literal meaning. *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998)(Label 'Director of Butt-licking' held not to be defamatory because it was incapable of any factual underpinning). The term "Lies" is sufficiently black-letter law, and need not be further discussed.  However, "absent" can be negated by the factual underpinning that Plaintiff's inclusion was not applicable; "Gaslighting" can be negated by the factual underpinning that Plaintiff had not only a basis, but a duty to supply a precondition for the Daughter's class-departures; "shady shenanigans" can be negated by the factual underpinning that Plaintiff and her team were applying county regulations in a fair and even-handed manner; and "power flex" can be negated by the factual underpinning that it is nearly universal that students can only attend extra-curricular activities if they attend school that day. If a phrase conveys factual information, particularly in light of nearby commentary, the phrase can support an action for defamation. *Id*.

Plaintiff's role in the 'Feeling Gaslit' video is an explanation of the various safety procedures applied to the Daughter by the school. According to Healthline.com, indicia of gaslighting from another person includes the following actions:

    i.     insist you said or did things you know you didn't do;
    ii.    deny or scoff at your recollection of events;
    iii.   call you "too sensitive" or "crazy" when you express your needs or concerns;
    iv.   express doubts to others about your feelings, behavior, and state of mind;
    v.    twisting or retelling events to shift blame to you;
    vi.   insist they're right and refuse to consider facts or your perspective.[3]

Any of these labels applied to Plaintiff and her team is *per se* actionable. If Defendant is insisting that Plaintiff is engaging in acts i or iv, then Defendant is using unexpressed facts to impugn Plaintiff's honesty; if acts ii, iii, v, or vi, then Defendant is impugning Plaintiff's professionalism

---

[3] https://www.healthline.com/health/gaslighting#signs

in the harshest manner.  Defendant is unmistakably stating that at least a portion of Plaintiff's decision is based on her malice towards Defendant and the ease of harming a medically-incapacitated young girl.

Plaintiff is explaining to the Defendant why the Daughter isn't simply allowed to leave class and use the restroom without any notice. The clear implication from this video is that these barriers to her restroom use are artificial contrivances for no other reason than to assert the administrators' "power flex" over a young girl with precarious health issues.

Defendant even suggests that the term "Shady Shenanigans" applied to Plaintiff in the 'Illegal Meetings' video is an expression of opinion. Even if this Court were to take this lame assertion at face value, an expression of an opinion concerning the work product of a professional may be actionable if they have a provably false connotation and are therefore capable of being proven true or false. *Goulmamine v. CVS Pharm., Inc*., 138 F. Supp. 3d 652 (E.D. Va. 2015). For example, when Defendant tells Plaintiff's direct superiors that Plaintiff fabricated the Daughter's opinion on her professional goals (i.e., cosmetologist) to one that differed from her mother's opinion (i.e., public advocacy attorney), this is capable of being proved true or false at trial. To the extent that Plaintiff created a set of inarticulate, and impossible criteria (as claimed by the Defendant's advocate "social scientist" publicly and in front of Plaintiff's professional superiors) for the measurement of the Daughter's progress in the SPED program, this too can be subjected to a Boolean analysis.

## II. MISCELLANEOUS: BIZARRE BACKTRACKING

It is a characteristic of the very guilty that they will often say whatever it takes in the moment to evade short-term consequences without much thought as to long-term consequences. Defendant seemingly just admitted by declaration and brief that the Plaintiff ought to feel silly

about believing herself defamed. It may even be frivolous – so says Defendant. So, when Plaintiff looks over the multiple videos that depict her, that include her speaking, where labeling such as "lies" and "shady shenanigans" are applied to her visage, etc., she should maybe feel that she her voice and image are included for a sense of completeness and context. Plaintiff invites this Court not to believe that an attention-seeker who characterizes her Daughter's blood-thinning medication as "chemo meds," Dkt. 18, p. 4, is interested in supplying the Internet mob with the 'whole story.'

One of the bizarre intricacies of this case is the wholesale backtracking by Defendant concerning her assertions about the Plaintiff. Although Defendant states that Plaintiff and her team (i.e., "admins" in Defendant's own words):

i. Exact arbitrary punishments and place impediments before special-needs students for no other reason to exert their dominance as a "power flex," including arbitrary prerequisites: for using the bathroom (Plaintiff specifically), attending a dance (Plaintiff referentially as one of the "admins"), and attending law school (Plaintiff specifically).

ii. Fabricate life goals of SPED students (I.e., cosmetologists) in contravention to students' expressed goals (i.e., an attorney advocating for special needs students) (Plaintiff specifically).

iii. Fail to attend meetings for which they are required and necessary (Plaintiff specifically), *and the absence of the teacher* is responsible for the inability to achieve satisfactory results in the meeting.

iv. Fail to articulate cognizable and non-impossible metrics for the measurement of progress. (Plaintiff specifically)

v. Illegally hold meetings, and such meeting violate IDEA and ADA (Plaintiff referentially)

vi. The above acts are applied to a young lady bothered by the effects of her "chemo medications,[4]" and a significant portion of her audience believes that this means that the Daughter has cancer.

It is easy to lambaste and shame public employees that are forbidden by policy and practice from responding to public comments. Defendant is a fantastic example of a cry-bully.

---

[4] The medications as cited by the Defendant are blood-thinners, e.g. Aspirin. If the effects of the blood thinner were significant, this is certainly the sort of defendant that would state so and make it a conspicuous part of the

Now that Defendant finds herself in a forum that cares about statements and truth; she is backtracking magnificently. None of these statements seem to apply to Plaintiff – although Defendant included video recordings in which Plaintiff plays a principal role, and even the fabrication of a false-video interface that includes Plaintiff (who is the only pictured person with a red-label). This is lame and shameless; but Plaintiff asks the Court to take the Defendant at her word. The idea that Plaintiff would feel the 'sting' of defamation is "frivolous" says Defendant…without any particular legal support and in the face of all evidence, rules of grammar, etc. Dkt. # 18, p.13

If Plaintiff's belief that she has been defamed is *so baseless* as to be frivolous, as Defendant says, how can Defendant's suggestion that the balance of equities weigh in her favor for the issuance of this restraining order? Taking Defendant at her word: right now, there is an international website that unambiguously accuses a small group of engaging in acts i-vi above; whether or not Plaintiff is performing the acts; instead "admins" (of which Plaintiff is one) and Prince William County Employees (always with images, including with Plaintiff) are engaging in them. If Plaintiff is not engaged in these acts, it is unclear why Defendant would demur to removal of Plaintiff's images and PII.

## III. NOERR-PENNINGTON DOCTRINE

The Noerr-Pennington Doctrine wholly immunizes statements concerning a petition to a federal court. The US Supreme Court set out the doctrine in Eas*tern Railroad Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127 (1961)  and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965) to protect collective lobbying by industry groups.  Defendant seems to be annoyed at Plaintiff's efforts to show the world at large that there is another point of

view; but castigates Plaintiff for doing it properly, i.e., by not adding further characterizations of the viewpoint other than a direct link to this Court's documents.

## **CONCLUSION**

The Defendant's attempt to characterize and explain away her assertions at the motion to dismiss stage is inappropriate. This Court should allow the defamation case to proceed because at least one of the viewpoints concerning Defendant's disparaging comments can be viewed as defamatory.

DATED: November 27, 2023

By *M. Keith Blankenship*
M. Keith Blankenship, Esq.
Attorney for (and husband of) Plaintiff
VSB# 70027
Da Vinci's Notebook, LLC
9000 Mike Garcia Dr
No. 52
Manassas, VA 20109
703-581-9562
keith@dnotebook.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have filed electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notice of such filing to the counsel of record who are registered with the CM/ECF system.

By : _M. Keith Blankenship_
M. Keith Blankenship