**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ADELINA BLANKENSHIP | Docket No. 1:23-cv-1328 |
| Plaintiff | |
| v. | |
| YESENIA LASSITER | |
| Defendant | JURY TRIAL DEMANDED |

BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I AND III

## **INTRODUCTION**

Brazen attention-seeking, childish theatrics, outlandish exaggerations; these traits characterized the social media Internet assault Defendant waged against Plaintiff, whom Defendant made an unwitting co-star in a low-grade reality show.  It was character assassination of the worst kind – and the Defendant urged mass public participation.  Defendant found a sort of fame – even once earning millions of social media views – and at every turn Defendant escalated the allegations and outrage-seeking, including flagrant deceptions, to stoke the mob.

The Plaintiff is a mother, SPED teacher/administrator – and a private person (legally and actually). The Defendant is a mother and an Internet provocateur that she uses to publicly advocate for special needs education of various kinds, including SPED.

Using social media, Defendant created a panoply of multimedia presentations with image, name, and audiovisual recordings of Plaintiff ripped from video-recorded school meetings. It is important to note that this legal action is not solely based on these video-recordings as the Defendant would have this Court believe. The accusations of illegality and defamation were constant and coarse; the presence of videos simply makes this action more inflammatory and dangerous for Plaintiff. Defendant was never supposed to have the recordings, nor post them publicly. The Plaintiff conducted SPED meetings in the usual manner with the Defendant, because the Daughter, although not qualifying for SPED services, received them due to Defendant's constant campaigning with Prince William County. The Daughter has medical maladies that may very well inhibit her ability to participate in formal education; however, they are physical maladies rather than cognitive maladies.

Physical maladies for students are handled on a 504 plan. See Compl. Par. 6. Cognitive issues are handled under IED. See Compl. Par. 6. The Defendant, although advised of the

difference, demanded IED meetings at an excessive pitch for which she demanded inapplicable IED services, and when Prince William County would not supply them at the degree to which Defendant demanded, she flew into hysterics, and then eventually began to tape the meetings and invent deficiencies of Prince William County IED team (the "IED Team") assigned to the Daughter (of which Plaintiff was the lead) and created non-existent maladies on the part of the Daughter to stoke mob-outrage. These were mostly captured on video.

Naturally, the videos themselves were based in fraud as the Defendant guilted a member of the IED Team to supply them to her because the Defendant required her own accommodation [sic] with Prince William County and stated that because Defendant had a "traumatic brain injury," she could only understand videos if she had audiovisual copies of them.  When Prince William County realized that she was posting select snippets of the videos publicly, it reminded her in an email that this was contrary to regulations, which, of course, she posted as a video.

## **FACTS**

(See Fact Section of Dkt. 8)

AND

Even More FOIA Requests. Even subsequent to the filing of the present action, Blankenship has received FOIA requests for her participation in the IEP of the Daughter of Defendant. Second Decl. of Adelina Blankenship. Defendant's implications that this case may be stale is misplaced.

## ARGUMENT

### I. THE LAW OF MOTIONS TO DISMISS.

When reviewing a motion to dismiss, the court should accept all well-pleaded allegations as true and should view the complaint in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[O]nly the legal sufficiency of the complaint, and not the facts in support of it, are tested under a 12(b)(6) motion, [and a court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy the plausibility standard, a plaintiff need not plead factual allegations in great detail, but the allegations must be sufficient to allow the court, "drawing on judicial experience and common sense, to infer more than the mere possibility" of the facts of the allegation. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (*quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009)).

### II. DECLARATORY JUDGMENTS

A declaration of rights is a form of relief that allows, among other things, a natural defendant to sue a natural plaintiff for a declaration as a remedy. The principle impediment to

court-issued declarations generally has been the U.S. Constitution's insistence upon a "case and controversy" concerning litigants. U.S Constitution, Article III, section 2. Declaratory judgements existed as a creature of federal common law prior to their express codification into United States Code. *Nashville, Chattanooga & St. Louis Railway Co. v. Wallace*, 88 U.S. 249, 260, 264-65 (1933).

> [C]hanges merely in the form or method of procedure ... are not enough to preclude review of the adjudication by this Court, so long as the case retains the essentials of an adversary proceeding, involving a real, not a hypothetical controversy .....

*Id*. Congress later followed with the Declaratory Judgment Act in 1934 (the "Act"), which exists as 28 U.S.C. §§ 2201-02.

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added)); *see also A.L. Mechling Barge Lines, Inc. v. U.S.*, 368 U.S. 324, 331 (1961); 10A Charles A. Wright et al., Federal Practice and Procedure § 2759 (2d ed. 1983). The Fourth Circuit has explained that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937)(quoting Edwin M. Borchard, Declaratory Judgments 107-09 (1934)). It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir.1996).

The declaratory judgement action serves multiple purposes and "meets a real need and should be liberally construed." *Quarles*, 92 F.2d at 325, and *see Centennial*, 88 F.3d at 256. Accordingly the two criteria underlying the declaratory judgment applicability. Accordingly, the two "principal criteria guiding the policy in favor of rendering declaratory judgments are:

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and

> (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Only one of these criterion need be satisfied. *Id*. ("It follows that *when neither of these results* can be accomplished, the court should decline to render the declaration prayed.")(emphasis added). Generally speaking, when a Court sees utility in rendering a declaratory judgment, the Fourth Circuit urges that it do so. *See Chase Brexton Health Services, Inc. v. Md.*, 411 F.3d 457, 466-67 (4th Cir.2005)(A court must not look for "some substantial reason for the exercise of jurisdiction ..." rather, this Court's duty is to "ascertain whether there exist 'exceptional' circumstances ... to justify the surrender of that jurisdiction.") *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction that Congress has defined for them. G*annett Co., Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 741 (4th Cir.2002); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006. A Court's "virtual unflagging obligation" to exercise its jurisdiction, that exercise of jurisdiction is significantly tempered by the Fourth Circuit's reminder that the exercise of jurisdiction "rest[s] in the sound discretion of the trial court, to be reasonably exercised in furtherance of the purposes of the statute." *Quarles*, 92 F.2d at 325.

This Court should exercise its discretion to embark on the declaratory judgment because doing so will satisfy the *Quarles* criteria in serving a useful purpose, and relieving substantial

insecurity on the part of the Plaintiff. The insecurity criterion is easily and readily satisfied: the Defendant overtly threatened to sue Plaintiff based expressly on Plaintiff's work product for a federal claim. The useful purpose criterion is satisfied: Plaintiff and her team of government administrators/teachers are frozen in capacity to assist in the creation and transition of the IEP of Plaintiff's daughter. Defendant doesn't simply find fault with Plaintiff's work product, it routinely finds it illegal/unlawful.

## III. THE *QUARLES* CRITERIA

### A.  A DECLARATORY JUDGEMENT RELIEVES INSECURITY

Defendant declared without any ambiguity that she would sue Plaintiff.  There is no caselaw, in any Circuit that the undersigned can locate, whereby the express threat of impending litigation is not a basis to satisfy the declaratory judgment basis.   This begs the question: Is it possible that Defendant would sue Plaintiff, or would Defendant content herself with simply suing Prince William County? The academic and practical aspects of 1983 litigation countenance a single outcome, respectively: everyone is potentially liable, and everyone gets sued.

One of the largest bodies of caselaw for declaratory judgments is the Federal Circuit.[1] It is widely recognized that "one of the most common and indisputably appropriate uses of the declaratory judgment procedure" is in the patent context." *Hanes Corp. v. Millard*, 531 F.2d 585, 592 (D.C. Cir. 1976).  This may be because patent litigation is complex, or exhaustive, that no theory passes unfought – or it may be the stakes associated with closing down a lucrative assembly

---

[1] The Federal Circuit was created in 1982. In *South Corp. v. U.S.*, 690 F.2d 1368 (Fed. Cir. 1982), the Federal Circuit incorporated the substantive caselaw of the Court of Customs and Patent Appeals, but the procedural caselaw of the general circuits concerning prior to 1982 was adopted as persuasive.  Therefore, the Federal Circuit had the opportunity to survey the declaratory judgments of the various Circuits, while simultaneously being the most prolific source of caselaw of declaratory judgments.

line on nothing more than a threat. However, there is no deeper bench of declaratory judgment law than the Federal Circuit. Its opinions, although not mandatory, are pragmatic, prolific, and sensible.

According to the Circuit Courts generally, the purpose of the Act is to end insecurity. So*ciete de Conditionnement en Aluminum v. Hunter Eng'g Co.,* 655 F.2d 938, 943 (9th Cir. 1981). *See also Universal Buslink Corp. v. Gen. Patent Corp. Int'l*, 68 U.S.P.Q.2d (BNA) 1543, 1544 (C.D. Cal. 2003) (One of the most common and indisputably appropriate uses of the declaratory procedure is to allow one accused of patent infringement to secure a judgment instead of waiting to become a defendant in an infringement suit.); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (Declaratory judgment is generally not subject to dismissal when it will settle the legal relations in a dispute and afford relief from uncertainty or insecurity.).

Once a patentee *makes a specific charge of infringement* against ongoing conduct, the actual controversy requirement is met. *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 936-37 (Fed.Cir.1993). A declaratory plaintiff "must show 'more than the nervous state of mind of a possible infringer,' but does not have to show that the patentee is 'poised on the courthouse steps." *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) (*quoting Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995)).

More Than a Nervous State of Mind.

There is more than a nervous state of mind in Plaintiff. Defendant has expressly told the Plaintiff "You're going to have a law suit." First Amd. Complaint, par. 31.G. Dkt. 11-1. Defendant named called the meeting concerning the application of Defendant's IEP criteria illegal, multiple times. First Amd. Complaint, par. 31.G(5, 7, 10), 32, 33. Nominally, Defendant expressed concerns that an IEP meeting would continue without Defendant's further input (because of the multiple litigation threats), but the heart of the objection was that Defendant would not get an opportunity

to contest to the attributes that Plaintiff applied to the Daughter's IEP. Alteration of the IEP that Plaintiff created was the sole-stated basis of the reason for extending the meeting, for which Defendant exclaimed so much dissatisfaction. Plaintiff wrote that IEP. Then Defendant named the law firm that she intended to use. First Amd. plaint, par. 31.G(9).

Defendant read Plaintiff's IEP document and found the criteria lacking – in fact, she found them "impossible." When Defendant demanded that Gainesville administrators explain the criteria, Defendant halted the explanation to state that any explanation was improbable. This Defendant explained to Plaintiff's superiors and colleagues.

Defendant suggests in its brief that its basis for threats of litigation were based on the Transition IEP Team's determination to cease any interaction with Defendant and proceed without her. This is a facially true reading, but it is also shallow and fact-agnostic. Although the meeting had been proceeding for three hours (at least two hours longer than the standard meeting), as the video expressly details, the basis for continuing the meeting was to "correct" the "impossible" criteria in the *pre-existing IEP document drafted by Plaintiff*. The threat couldn't be clearer: Plaintiff's work product was unsatisfactory to Defendant and unless Defendant had a personal hand in correcting it, there would be a lawsuit. When Defendant's rudeness, gamesmanship, condescension, and threats crossed the line, Defendant would be permitted no further access to the IEP discussion that Defendant found unsatisfactory. Of course Plaintiff would be caught up in the lawsuit; a sensible reading of Defendant's express complaints suggests that she would be the primary witness and defendant.

**B.    PLAINTIFF IS IN THE CROSSHAIRS OF DEFENDANTS' LITIGATION MACHINATIONS.**

**1. GOVERNMENT EMPLOYEE LIABILITY GENERALLY**

42 USCS § 1983 gives remedy—action at law, suit in equity, or other proper proceeding for redress—to parties deprived of constitutional rights, privileges, and immunities by official's abuse of his position. *Monroe v. Pape*, 365 U.S. 167 (1961). 42 USCS § 1983, which authorizes redress for violations of constitutional and statutory rights, is not itself source of substantive rights, but rather method for vindicating federal rights elsewhere conferred by those parts of United States Constitution and federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).  The focus of § 1983 is on misuse of power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law. *Johnston v. Lucas*, 786 F.2d 1254 (5th Cir. 1986). Suits against state officers in their individual capacities are not barred by Eleventh Amendment inasmuch as such suits proceed on theory that when officer acts unconstitutionally he is stripped of his official or representative character and is subjected to consequences of his official conduct. *Medcalf v. Kansas*, 626 F. Supp. 1179 (D. Kan. 1986).

Section 1983 is remedial statute which does not create substantive rights but provides remedy for violation of rights created elsewhere; where a statute provides particular procedure and exclusive remedy for violations, § 1983 may not be used to obtain additional remedies; however the fact that a statute contains comprehensive remedial scheme does not rule out availability of all additional remedies under § 1983.  *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir 1984)(The fact that a statute contains a comprehensive remedial scheme does not necessarily rule out the availability of all additional remedies under § 1983); *See also, Smith v. Robinson*, 468 U.S. 992 (1984)(Education of the Handicapped Act, 20 U.S.C. § 1400 et seq., precluded the assertion under § 1983 of equal protection claims virtually identical to EHA claims, but did not rule out the assertion of independent due process claims.)

Section 1983 does not permit finding of liability based on any *respondeat superior* theory, but, rather, when suing individuals in supervisory capacities, plaintiff has burden of demonstrating either supervisor's personal involvement in violation…policy leading to violation. *Mabine v. Vaughn*, 25 F. Supp. 2d 587, 1998 U.S. Dist. LEXIS 16776 (E.D. Pa. 1998). While doctrine of *respondeat superior* liability is inapposite in action brought under 42 USCS § 1983, such liability can arise out of participation in custom that leads to violation of constitutional rights, or by acting with deliberate indifference to constitutional rights of others. *Herrera v. Davila*, 272 F. Supp. 2d 154, 2003 U.S. Dist. LEXIS 12690 (D.P.R. 2003).

"A supervisory officer may be held liable for the behavior of his subordinate officers where his action or inaction [is] affirmatively linked … to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Wilson v. Town of Mendon*, , 294 F.3d 1, 6 (1st Cir. 2002). Personal responsibility requirement for individual liability in § 1983 action is satisfied where official acts or fails to act with deliberate or reckless disregard of plaintiff's constitutional rights, or if conduct causing deprivation occurs at her direction or with her knowledge and consent. Catlett v. Peters, 32 F. Supp. 2d 1010 (N.D. Ill. 1998).

"Personal involvement is a prerequisite for individual liability in a § 1983 action." *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) (citing Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) (finding that "an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation" since "section 1983 creates a cause of action based upon personal liability and predicated upon fault")). This personal responsibility requirement is satisfied where an official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation

occurs at her direction or with her knowledge and consent." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)).

Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. Farmer v. Brennan, 511 U.S. 825, 837 (1994)., 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. [An official] must also draw the inference between those general facts and the specific risk of harm confronting the [person]." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (*citing Farmer*, 511 U.S. at 837); *see Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (to satisfy the second prong of *Farmer*, "the official in question [must have] subjectively recognized a substantial risk of harm.... [and] the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" (*quoting Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); "a defendant "must have had

personal knowledge of and involvement in the alleged deprivation of [plaintiff]'s rights in order to be liable"). Further, to state a claim under §1983, a plaintiff must claim that the defendant, through her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676. A plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights," *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977),

A claim under section 1983 may not be maintained where another federal statute provides the exclusive avenue of enforcement for the protected rights. C*f. Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989) ("The provisions of the ADEA [Age Discrimination in Employment Act] . . . evidence congressional intent to foreclose actions for age discrimination under § 1983."). The rationale underlying this determination is that "Congress has enacted a comprehensive statute specifically designed to redress grievances alleged by the plaintiff." *Id*. IDEA, however, confers substantive rights but provides no exclusive remedies. *Cf Philipp v. Carey,* 517 F. Supp. 513, 520 (N.D.N.Y. 1981). When an Act does not encompass a comprehensive enforcement scheme, courts allow an implied private right of action. *Id*. Although the issue has not yet been addressed by the Fourth Circuit, IDEA is "not so comprehensive as to '[leave] no room for additional private remedies under § 1983.'" *Cf Conlon v. City of Long Beach*, 676 F. Supp. 1289, 1298 (E.D.N.Y. 1987).

## 2. TEACHER LIABILITY SPECIFICALLY

Generally speaking, county actors are sued in their individual capacity in the event that a government organization includes adequate policies that are not followed by the employees. A school district must comply with both the procedural and substantive components of the IDEA. In determining whether a school district denied a student accommodations under IDEA, the Court must examine whether "the State complied with the procedures set forth in the Act," and second,

whether an IEP was "reasonably calculated to enable the child to receive educational benefits." *Bd. Of Educ. v. Rowley*, 458 U.S.176, 206-07 (1982). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id*. at 207.

As is the case under denial-of-rights cases, a government employee's denial of such rights opens them to personal liability. Parents of IEP students can and have sued SPED personnel on the basis of their dissatisfaction with the criteria and performance of an IED. *See, e.g. D.B. v. Esposito*, 675 F.3d 26, 32 (1st Circuit 2012)(The IED subject's "father, David, responded to Esposito[the SPED director]'s letter, stating that he and [the IED subject] felt "singled out" by Esposito's drop-off instructions."). These actions may be filed in state or federal courts based on either substantive denial of rights, or procedural denials of rights. *See e.g., K.A. v. Fulton County Sch. Dist.*, 741 F.3d 1195, 1203 (11th Cir. 2013)("K.A.'s parents argue that the school district did not comply with the IDEA's procedural requirements. They do not challenge the substance of their daughter's individualized education program or the amendment. Their arguments go only to procedure"). Lawsuits may be based on the effects or failures of IEPs. Esposito, 675 F.3d at 32. ("The 2005 IEP never went into effect. Instead, in February 2005, David sent Esposito a nine-page letter describing his concerns with the 2005 IEP and with the Sutton school system. Among these concerns was the behavior of one of D.B.'s therapists"). Interestingly, and quite fitting for the present case, the *Esposito* case involved a student accused of lying: "[The therapist] implicitly called [Elizabeth] a liar when [Elizabeth] told her that [D.B.] was saying particular words in a natural environment. . ." *Id*.

### 3. THE PLAINTIFF'S ACTIONS

The Plaintiff drafted the IED Plan at which Defendant takes such serious umbrage – umbrage to the extent that she threatens a lawsuit unless there is a continued discussion and change. Plaintiff is the leader of the SPED Team that provided discussion.  The Plaintiff was the case manager for the Daughter for at least the last school year. When the Defendant excoriates the IEP Team for their lies about teacher and meeting availability, Defendant excoriates the Plaintiff who provides the meeting times and availability. When Defendant pretends that the Daughter is the subject of capricious judgment that stops the Daughter from attending a school function based on her so-called cancer-treatments; Defendant blamed the administrators knowledgeable of the Daughter's medical problems – that is to say, the IEP Team. When Defendant claimed that she was being "gaslit," in other words deliberately deceived by assertions of the IEP Team, she claimed that the IEP Team was intentionally putting unnecessary obstacles in the way of a disabled student on her way to the bathroom (for unknown purposes/reasons). For almost all of Defendant's gripes against the employees of Prince William County, she created 'Wanted Posters' encouraging the Internet Mob to attack the employee.  She sought out the Plaintiff's personal information specifically, but this action forestalled Plaintiff's 'Wanted Poster.'

It is also important to review the Defendant's specific assertions. As discussed elsewhere, liability for government impeding of student rights includes two potential defendant types: the government and its employees. Generally and academically speaking, when policy interferes with the rights of a citizen, the government is liable; however, when the appropriate policy exists to provide rights to the citizen, but those policies are ignored by government employees, the government employees are liable.  Although the Defendant presents multiple, convoluted explanations for 'what the Defendant really meant to say,' the Defendant's statements include a substantial barrage of deficiencies against the employees in their individual capacity.  It wasn't

enough that the Prince William County policies were deficient; the employees were characterized as monsters of cruelty in the starkest terms: (i) "The administrators" (i.e., the IEP Team, which had the greatest knowledge of the Daughter's medical incapacities) utilized their capricious "power flex" to stop a cancer patient from attending a dance;[2] (ii) "The administrators" gaslit a young girl having medical problems from using the restroom at-will for no other reason than their capriciousness;[3] (iii) The IEP Team, particularly Plaintiff, drafted an IEP Plan that was unrelated to the IEP needs of the Daughter.

### 4.   TITLE 42 CLAIMS OR TITLE 20 CLAIMS

Congress designed the IDEA as part of an effort to help states provide educational services to disabled children." *C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52, 126 S. Ct. 528, (2005). The IDEA aims to prepare children with disabilities for independent living and a reasonable measure of self-sufficiency where possible. See 20 U.S.C. § 1400(c)(1), (d)(1)(A); B*d. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 n.23 (1982).  To that end, a state receiving federal funding under the IDEA must offer a FAPE to every disabled child within its jurisdiction. See 20 U.S.C. § 1412(a)(1)(A). "A FAPE encompasses special education and support services provided free of charge." *C.G. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279, 284 (1st Cir. 2008). (citing 20 U.S.C. § 1401(9)). "  The "primary vehicle" for delivery of a FAPE is an IEP. *Lessard v. Wilton-Lyndeborough Coop. Sch. Dist. (Lessard I)*, 518 F.3d 18, 23 (1st Cir. 2008); *see also D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) ("The IEP is . . . the centerpiece of the IDEA's system for delivering education to disabled children." (internal quotation marks omitted)).

---

[2] This is an express claim by Defendant.
[3] This is an implied claim by Defendant.  In a lengthy three-part video, Defendant portrays Plaintiff speaking concerning the reason that the Daughter is not permitted to leave the class without identifying a basis. The obvious basis for the claim of being 'gaslit' is that the demand for a basis is capricious.

An IEP must be "individually designed" to suit a particular child, Rowley, 458 U.S. at 201, and must include, "at a bare minimum, the child's present level of educational attainment, the short- and long-term goals for his or her education, objective criteria with which to measure progress toward those goals, and the specific services to be offered," *Lessard I*, 518 F.3d at 23 (citing 20 U.S.C. § 1414(d)(1)(A)); see also Schaffer, 546 U.S. at 53.

However, "the obligation to devise a custom-tailored IEP does not imply that a disabled child is entitled to the maximum educational benefit possible." Lessard I, 518 F.3d at 23; see also Rowley, 458 U.S. at 198; *Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm.*, 361 F.3d 80, 83 (1st Cir. 2004). The Supreme Court has said that an IEP must offer only "some educational benefit" to a disabled child. *Rowley*, 458 U.S. at 200. Thus, the IDEA sets "modest goals: it emphasizes an appropriate rather than an ideal, education; it requires an adequate, rather than an optimal, IEP." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir. 1993). At the same time, the IDEA calls for more than a trivial educational benefit, in line with the intent of Congress to establish a "federal basic floor of meaningful, beneficial educational opportunity." *Town of Burlington v. Dep't of Educ. of Mass.*, 736 F.2d 773, 789 (1st Cir. 1984).  At bottom, this obligation is an obligation to provide an adequate and appropriate education. The IDEA does not place school systems under a compulsion to afford a disabled child an ideal or an optimal education. *See Lenn*, 998 F.2d at 1086.  It is common ground that the IDEA manifests a preference for mainstreaming disabled children. *See, e.g., Rowley,* 458 U.S. at 202. This entails ensuring, "[t]o the maximum extent appropriate," that disabled children are taught with nondisabled children. 20 U.S.C. § 1412(a)(5)(A).

Such rights could be litigated under 42 U.S.C. § 1983 or perhaps under 20 U.S.C. §1412, etc.  To the extent that this Court rules that the appropriate relief ought be provided under Title 20 rather than Title 42, Plaintiff asks this Court for leave to amend.

**B. A USEFUL PURPOSE**

The present case serves a useful purpose under the *Quarles* standard. Not only is the threat of litigation in the air, but also Defendant's threats of litigation and intimidation have continued up until the present date. Up until one month ago, Plaintiff has been asked to participate in FOIA requests based on Defendant's alleged IDEA deficiencies filed subsequent to the filing of this action. Plaintiff is still involved in the Daughter's case file, and Defendant is still seeking Plaintiff's involvement in the Daughter's IEP and IEP history.  See Second Decl. of Adelina Blankenship, par. 3.

**C. DECLARATORY JUDGMENTS GENERALLY**

This Court has discretion to act in its own interests. The Supreme Court held in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) and reaffirmed in *Wilton v. Seven Falls Co.*, 515 U.S. 277, (1995) that when a plaintiff brings a declaratory judgment action, the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it. This discretion stems from the federal Declaratory Judgment Act, which expressly provides that district courts "may declare the rights and other legal relations of any interested party seeking a declaration." 28 U.S.C. § 2201(a) (emphasis added). Given this "nonobligatory" language, the Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

Thus, even when a court has jurisdiction, it "is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." *Id*. This court has likewise recognized that "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (citations and internal quotations omitted).

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* This doctrine applies "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* The Court must not look for "some substantial reason for the *exercise* of jurisdiction ..." rather, this Court's duty is to "ascertain whether there exist 'exceptional' circumstances ... to justify the surrender of that jurisdiction." *Chase Brexton Health Services, Inc. v. Md.*, 411 F.3d 457, 466-67 (4th Cir. 2005), (emphasis in original) *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). *Colorado River* demarcates an extremely narrow exception to the general principle that federal courts have a "virtually unflagging" obligation to exercise the jurisdiction that Congress has defined for them. *Gannett Co., Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 741 (4th Cir.2002); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006).

A declaratory action allows a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the

commencement of legal action by the other side." *BP Chems. Ltd. v. Union Carbide Corp.*, 4

F.3d 975, 977 (Fed. Cir. 1993).[4] The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act, 28 U.S.C. § 2201, is remedial only. It "enlarged the range

of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil v.*

*Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). A party's legal interest under the Act must relate

to an actual "claim arising under federal law which another asserts against him . . . .""*Lowe v.*

*Ingalls Shipbuilding, A Div. of Litton*, 723 F.2d 1173, 1179 (5th Cir. 1984). Because it is "the

underlying cause of action of the defendant against the plaintiff that is actually litigated in a

declaratory judgment action, a party bringing a declaratory judgment action must have been a

proper party had the defendant brought suit on the underlying cause of action." *Collin County, Tex.*

*v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir.

1990). Therefore, a court should identify the federal law under which a Declaratory-Judgement-

Plaintiff is proceeding.

Here the Plaintiff is proceeding under a civil rights claim – but as an individual.

constitutional claims under Section 1983 can be brought against a school district (directly or by

suing administrators in their official capacities) *and against school officials and employees in their*

*individual capacities* for money damages. *Monell v. Department of Soc. Servs. of City of New*

*York*, 436U.S. 658 (1978).

---

[4] Patent citations to the Declaratory Judgment Act are cited herein not because of their mandatory application to this Court, but rather because patent litigation has the densest body of caselaw concerning threats of litigation concerning a federal claim. Also, the undersigned is a patent litigation attorney.

The case or controversy requirement for a declaratory judgment action requires the presence of two elements. First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879 (Fed. Cir. 1983). Then, the plaintiff seeking the declaration must have actually produced, or prepared to produce, the threatened work product. *Cf. See Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 875 (1st Cir. 1971). This is not a gray area: Lassiter, and her legal advocates, were explicit: 'We will sue you.' 'You are in violation of the ADA and IDEA.' Blankenship drafted the documents upon which the threats were premised.

**IV. Violation of Va. Code Ann. § 18.2-152.1, et. seq:** *The Virginia Computer Crimes Act*

The Virginia Computer Crimes Act is a fairly new statute. The Defendant has no rights to the video. Prince William County made this clear to the Defendant. The Defendant finagled the video from IEP Team Members citing "a traumatic brain injury." See Second Decl. of Adelina Blankenship, par. 4. the County was quite explicit that the Defendant had no rights to re-publish the videos. In an act of spite, she republished the audiovisual County reprimand.

The Defendant had no rights to the videos that she acquired on the basis of fraud. She certainly had no right to republish the videos on the Internet. When she republished the videos selectively edited to harm Prince William County employees, including the Plaintiff, she committed a crime.


**CONCLUSION**

When the Defendant threatened the Plaintiff with a lawsuit, she embarked on a litigious path that allowed a declaratory judgement.  The specific assertions that she made put Plaintiff in the crosshairs of litigation, perhaps moreso than the county. The fraudulent acquisition and non-rightful transmission of her Daugther's IEP Meeting videos throughout the Internet was not merely crass, it was illegal as well.


DATED: November 27, 2023

By *M. Keith Blankenship*
M. Keith Blankenship, Esq.
Attorney for (and husband of) Plaintiff
VSB# 70027
Da Vinci's Notebook, LLC
9000 Mike Garcia Dr
No. 52
Manassas, VA 20109
703-581-9562
keith@dnotebook.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have filed electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notice of such filing to the counsel of record who are registered with the CM/ECF system.

By : _M. Keith Blankenship_
M. Keith Blankenship